**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 06-729-1** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL PURNELL** | : | |
| **Petitioner** | : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                    SEPTEMBER 8, 2008

Michael Purnell pleaded guilty to various identity theft crimes in federal court. After sentencing, Mr. Purnell filed a 28 U.S.C. § 2255 motion to vacate, set aside or correct his sentence. Instead of responding to the claims raised in Mr. Purnell's § 2255 motion, the Government moved to dismiss the motion, arguing that by entering into a guilty plea agreement, Mr. Purnell waived his right to seek collateral review of either his conviction or his sentence. After careful consideration of Mr. Purnell's § 2255 motion, the Government's motion to dismiss, and review of the plea agreement and transcripts of Mr. Purnell's change of plea and sentencing hearings, for the reasons discussed below, the Government's motion to dismiss will be granted and Mr. Purnell's § 2255 motion will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

A federal grand jury indicted Mr. Purnell in a 51-count superceding indictment, arising from his leadership of an identity theft scheme. On May 22, 2007, Mr. Purnell pleaded guilty to all 51 charges pursuant to a plea agreement.[1] The plea agreement included the following

---

[1] Mr. Purnell was charged with, and pleaded guilty to, the following offenses: conspiracy to commit wire fraud and identity theft, in violation of 18 U.S.C. § 371 (Count One); wire fraud, and aiding and abetting same, in violation of 18 U.S.C. §§ 1343, 1349, and 2 (Counts Two Through Nine); identity theft, and aiding and abetting same, in violation of 18 U.S.C. §§ 1028(a)(7), (b)(1)(D), (c)(3)(A), and 2 (Counts Ten through 30); and aggravated identity theft, and aiding and abetting same, in violation of 18 U.S.C. §§ 1028A(a)(1), (c)(5), and 2 (Counts 31

language concerning Mr. Purnell's right to appeal or seek collateral review of his conviction

and/or sentence, including limitations imposed upon that right:

> 8.     In exchange for the undertakings made by the government in entering this plea agreement, the defendant [Mr. Purnell] voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.
>
> > a     Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
> >
> > b.    If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:
> >
> > > (1)    the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 5 above;
> > >
> > > (2)    the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; and/or
> > >
> > > (3)    the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 125 S. Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.
>
> If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

(Def. Plea Agreement at 6-7 ¶ 8.)

During Mr. Purnell's May 22, 2007 change of plea hearing, the Court reviewed the guilty

plea agreement in detail with Mr. Purnell.  The Court asked Mr. Purnell whether he understood

that by pleading guilty he would be giving up his right to appeal, and Mr. Purnell responded that

he did.  (May 22, 2007 Hr. Tr. 28:14-17; see generally May 22, 2007 Hr. Tr. 28:14-30:23.)  Mr.

Purnell acknowledged that he understood that by pleading guilty his right to appeal would be

_____

through 51).

severely limited (May 22, 2007 Hrg. Tr. 29:5-7), and that he would be prevented from utilizing later proceedings such as a petition for a writ of habeas corpus to challenge his arrest, the Government's investigation or his conviction.  (May 22, 2007 Hrg. Tr. 29:9-13.)  Mr. Purnell acknowledged that he understood that if he pleaded guilty he would only be entitled to appeal his sentence if the Government appealed his sentence, if the Court imposed an illegal sentence, or if there was an error in the Court's proceedings.  (May 22, 2007 Hrg. Tr. 29:14-18.)  The Court then asked Mr. Purnell whether he understood that if he received a longer sentence than he expected, he would still be "stuck with" his plea, and he stated that he understood.  (May 22, 2007 Hr. Tr. 30:5-9.)  He stated that he understood that no one could guarantee what sentence the Court would impose. (May 22, 2007 Hr. Tr. 30:10-12.)  At that time, the Court concluded that Mr. Purnell was competent and capable of entering an informed plea of guilty, and that his plea of guilty was knowing, voluntary and intelligibly made.  (May 22, 2007 Hr. Tr. 45:7-18.)

On September 14, 2007, the Court imposed upon Mr. Purnell a sentence that includes a term of imprisonment  of 121 months, comprised of 60 months for Count One, and 97 months for Counts Two through 30, to run concurrently with one another, plus 24 months for Counts 31 through 51 to run concurrent with each other but consecutive to the 97-month sentence imposed for Counts One through 30.  The 24-month sentence on Counts 31 through 51 was mandated by statute.  The Court also sentenced Mr. Purnell to three years of supervised release to commence following completion of his term of imprisonment on Counts One through 30, and one year of supervised release on Counts 31 through 51, to run concurrently.  In addition, the Court ordered Mr. Purnell to pay a special assessment of $5,100 and restitution of $639,185.

On May 5, 2008, more than seven months after Mr. Purnell was sentenced, he filed the

instant § 2255 petition,[2] seeking to vacate, set aside or correct his sentence.[3]  In his petition, Mr.

Purnell argues that he is entitled to a new sentencing for two reasons.  First, he argues that he was

denied the effective assistance of counsel because he requested his trial counsel to file a notice of

appeal and counsel failed to do so.[4]  Secondly, he argues that his trial counsel was ineffective

because he failed to properly investigate pertinent facts surrounding the use of prior convictions

as enhancements to his sentence.  Instead of responding to Mr. Purnell's petition, the

Government filed a motion to dismiss the petition, arguing that Mr. Purnell had waived his right

to appeal or collaterally attack his sentence.  Mr. Purnell has not responded to, or otherwise

opposed, the Government's motion.  The Court assumes Mr. Purnell disputes the merit of the

Government's motion.

**DISCUSSION**

The Court of Appeals for the Third Circuit recently held that a collateral waiver provision

contained in a plea agreement is enforceable if it (1) was knowing and voluntary; and (2) does

not work a miscarriage of justice.  United States v. Mabry, No. 06-2867, 2008 U.S. App. LEXIS

15956, at *35 (3d Cir. July 28, 2008).  While the court of appeals has not articulated a precise

definition of the phrase "miscarriage of justice," see id. at *31 (noting that the court has

"declined to identify a list of specific circumstances which would give rise to, or constitute, a

---

[2] Along with his § 2255 petition, which he filed on the required standard form, Mr. Purnell submitted a memorandum of law in support of his motion.  He also attached various documents as exhibits to his memorandum of law.

[3] Mr. Purnell's § 2255 motion does not challenge his conviction.

[4] Mr. Purnell does not explain on what grounds he requested his attorney to appeal.  In his § 2255 petition and supporting memorandum, he merely states that he asked his attorney to file a notice of appeal during the permitted time frame, and that his attorney failed to do so.

miscarriage of justice"); <u>United States v. Jackson</u>, 523 F.3d 234, 242-243 (3d Cir. 2008) (<u>citing</u>

<u>United States v. Khattak</u>, 273 F.3d 557, 563 (3d Cir. 2001)) (noting that the court of appeals

chose "not to earmark specific situations" in which to relieve the defendant of a waiver), it has

set forth several factors to consider when determining whether to enforce an otherwise proper

waiver.  These factors include "the clarity of the error, its gravity, its character (e.g., whether it

concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on

the defendant, the impact of correcting the error on the government, and the extent to which the

defendant acquiesced in the result." <u>Khattak</u>, 273 F.3d at 563 (<u>quoting</u> <u>United States v. Teeter</u>,

257 F.3d 14, 25-26 (1st Cir. 2001)); <u>Mabry</u>, 2008 U.S. App. LEXIS 15956, at *31.  The same

standard applies to waivers of appeals and waivers of collateral review.  <u>United States v.</u>

<u>Shedrick</u>, 493 F.3d 292, 298 & n.6 (3d Cir. 2007).

The language of the plea agreement in this case is plain and clear as to its purpose to, and

effect to, bind Mr. Purnell and the Government to its provisions.  The language from paragraph

eight of the plea agreement quoted above makes clear that Mr. Purnell waived his right to appeal

his conviction or sentence, subject to specific exceptions that are not present here, and that he

waived his right to collaterally attack his conviction and sentence by way of a § 2255 motion (or

otherwise).  This waiver is enforceable unless Mr. Purnell establishes that his waiver was not

knowing or voluntary or that upholding the waiver would constitute a "miscarriage of justice."

## A.    Knowing and Voluntary

Mr. Purnell, who filed his § 2255 petition <u>pro se</u>, has not argued, or even suggested, that

his waiver of appellate or collateral review was involuntary or that it was somehow rendered

without his knowledge.  Indeed, as recited above, during his change of plea hearing on May 22,

5

2007, the Court engaged in a lengthy and thorough guilty plea colloquy with Mr. Purnell, who was represented by counsel during those proceedings.  At that time, Mr. Purnell confirmed that he knowingly and voluntarily entered into the guilty plea agreement with the Government and that he understood the appellate and collateral review waivers that were part of the plea agreement.

The Court notes that Mr. Purnell has not argued that his trial counsel was ineffective at the guilty plea stage.  For example, he has not argued that trial counsel failed to explain that by entering a plea of guilty he would be waiving his right to appeal or seek collateral review of his conviction or sentence.  Thus, based on the Court's prior interaction with Mr. Purnell and a review of the transcript from his change of plea hearing, the Court once again finds that Mr. Purnell's decision to plead guilty and to waive his appeal and collateral review rights was knowing, voluntary and intelligibly made.

**B.      "Miscarriage of Justice"**

The Court must "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver" in this case.  Mabry, 2008 U.S. App. LEXIS 15956, at *31-32.  The collateral waiver in Mr. Purnell's plea agreement is broad and offers no express exceptions.  Therefore, only the "miscarriage of justice" exception is available.  Id.

In Mabry, the court of appeals considered whether counsel's failure to file an appeal, even when the petitioner waived his appeal rights, creates a "presumption of prejudice" as discussed in Roe v. Flores-Ortega, 528 U.S. 170 (2000), which might invalidate an otherwise valid waiver. See generally Mabry, 2008 U.S. App. LEXIS 15956, at *20-31.  In Flores-Ortega, the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about

6

an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. The Supreme Court made clear that a presumption of prejudice applies in the context of an ineffectiveness claim because an attorney's deficient performance deprives the defendant of his or her opportunity for an appellate proceeding. Mabry, 2008 U.S. App. LEXIS 15956, at *22 (citing Flores-Ortega, 528 U.S. at 483). Notably, however, in Flores-Ortega the Court did not address whether this principle controls where a defendant has waived his right to appellate or collateral review. Id.

The Mabry court found that the "presumption of prejudice" analysis does not "fit" in the context of a waiver. Id. at *28. In situations where there is no waiver, "the filing of a notice of appeal is a purely ministerial task that could only help, not harm the defendant. " Id. at *24. However, the same proposition is not true where the defendant has waived his appellate rights. The court of appeals refused to "to presume prejudice amounting to a miscarriage of justice in such a situation where the attorney's filing of an appeal would constitute a violation of the plea agreement, relieving the government of its obligations as well." Id. at *26. The court stated:

> The analysis employed in evaluating an ineffectiveness of counsel claim does not apply when there is an appellate waiver. While a defendant may be entitled to habeas relief if his attorney ineffectively fails to file a requested appeal because it is presumed to be prejudicial under Flores-Ortega, if that same defendant has effectively waived his right to habeas, he cannot even bring such a claim unless the waiver fails to pass muster under an entirely different test: one that examines its knowing and voluntary nature and asks whether its enforcement would work a miscarriage of justice.

Id. at *27-28.

In this case, enforcing the waiver in the plea agreement would not result in a miscarriage of justice.  The court of appeals has held that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [a defendant] from understanding his plea or from filing a direct appeal as permitted by his plea agreement would result in a miscarriage of justice." United States v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007) (emphasis added); United States v. Wilson, 429 F.3d 455 (3d Cir. 2005).  Neither of these circumstances is present here.  As noted above, Mr. Purnell does not argue that he misunderstood his plea agreement, nor does he claim that deficient lawyering in any way prevented his understanding his plea agreement.  Indeed, the record indicates that Mr. Purnell understood well the consequences of signing the plea agreement, including the severe limitations it imposed on his right to appeal.  Moreover, deficient lawyering did not prevent Mr. Purnell from filing a direct appeal permitted by his plea agreement because none of the exceptions provided for in paragraphs 8(a) or 8(b) of the plea agreement are applicable.[5]

---

[5] That is, the Government did not appeal Mr. Purnell's sentence, the sentence (as to any count of his conviction) does not exceed the applicable statutory maximum, the Court did not erroneously depart upward pursuant to the Sentencing Guidelines – indeed, the Court did not depart upward at all – and the Court did not impose a sentence that exceeded the final Sentencing Guideline range.

Arguably, Mr. Purnell's petition could be read to assert that the plea agreement entitles him to appeal the Court's determination that his prior conviction was an inappropriate consideration as a sentencing enhancement.  Mr. Purnell argues that his counsel erred by not fully investigating his prior convictions, which the Court used as an "enhancement" to his sentence.  However, the guilty plea agreement that Mr. Purnell signed only entitles him to appeal an erroneous "upward departure" under the Guidelines, and an "enhancement" is different than "upward departure."   The court of appeals explained in Shedrick that:

An "enhancement" is an adjustment to the base offense level as specifically provided by the Guidelines, whereas an "upward departure" is a discretionary adjustment to the Guidelines range once calculated.  After United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the difference is now represented in the

distinction between steps one and two as set out in United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006).

Shedrick, 493 F.3d 292, 298 n.5.  In Gunter, the court of appeals outlined a three-step sentencing process that district courts must follow post-Booker.  462 F.3d at 247.  At step one, a district court must continue to calculate a defendant's Guidelines sentence precisely as it would have before Booker.  Id.  At step two, the district court must "'formally rul[e] on the motions of both parties and stat[e] on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and tak[e] into account [our] Circuit's pre-Booker case law, which continues to have advisory force.'"  Id. (quoting United States v. King, 454 F.3d 187, 196 (3d Cir. 2006).  Finally, at step three, the district court must "exercise[] its discretion by considering the relevant [§ 3553(a)] factors," id. (quoting King, 454 F.3d at 194 (quoting United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006))), in setting the sentence it imposes "regardless whether it varies from the sentence calculated under the Guidelines."  Id.

In Shedrick the defendant had signed a plea agreement that, for purposes of the issue of waiver of appeal, was practically identical to the agreement signed by Mr. Purnell.  The court held that the defendant had a right to appeal the district court's upward departure under his plea waiver, but that "the literal words of that waiver make clear that he [had] no concomitant right to appeal the enhancement."  Shedrick, 493 F.3d 292, 298 n.5.  Therefore, pursuant to the terms of Mr. Purnell's plea agreement, an "upward departure," if erroneously applied, would have entitled Mr. Purnell to appeal his sentence, but the Court's application of an "enhancement" does not provide the basis for Mr. Purnell to appeal.

Moreover, as the Government notes in its motion, Mr. Purnell's sentence was within the range contemplated by the plea agreement, which he voluntarily and knowingly executed, and it was with the Guideline range.  The plea agreement provided that the total maximum sentence for all 51 charges was 76 years' imprisonment, including a mandatory minimum of two to six years' imprisonment, 3 years supervised release, a $2,000,000 fine, and an $800 mandatory special assessment, plus full restitution and forfeiture.  Under the Sentencing Guidelines, Mr. Purnell faced a range of imprisonment of 92 to 115 months, plus a consecutive term of 24 months' imprisonment on each of Counts 31 through 51, for a total of 116 to 139 months' imprisonment.  In addition, under the Sentencing Guidelines, Mr. Purnell faced a term of supervised release of two to three years for Counts One through 30, and one year for Counts 31 through 51.  (These Guideline calculations were based on a total offense level of 26 and a criminal history level category of IV.  If the prior conviction Mr. Purnell refers to in his motion was not used as an enhancement, his criminal history category would have been reduced to III, and the Guideline range correspondingly would have been reduced to 102 to 117 months' imprisonment.)  The sentence Mr. Purnell received, therefore, which included a total of 121 months' imprisonment and four years of supervised release, did not exceed the statutory maximum, the sentence contemplated in the plea agreement, or the Guideline range.  The Court did not depart, either upward or downward, from the Guideline range.

9

Mr. Purnell's claims of ineffective assistance of counsel do not expose a potential

"miscarriage of justice" because the issues Mr. Purnell seeks to raise on appeal "do not implicate

fundamental rights or constitutional principles."  Mabry, 2008 U.S. App. LEXIS 15956, at *34.

Moreover, the question of whether Mr. Purnell's counsel at sentencing was ineffective for failing

to investigate certain facts regarding prior convictions was "clearly encompassed by the broad

waiver" contained in the plea agreement.[6]  Accordingly, Mr. Purnell is barred from raising these

_____

[6] In its motion the Government notes that at Mr. Purnell's sentencing hearing his counsel did object to Mr. Purnell's prior conviction being used to enhance his sentence under the Guidelines.  Mr. Purnell previously had raised this issue and prior to the sentencing hearing the U.S. Probation Office investigated his prior conviction and presented the results of its investigation to the Court.

The issue was whether Mr. Purnell's  January 4, 1989 conviction should be assigned criminal history points to be considered in establishing a criminal history category under the Sentencing Guidelines.  The Government contended that Mr. Purnell was incarcerated within 15 years of April of 1990 – the date of the commission of the crimes charged in the Superceding Indictment in this case – as he was incarcerated as a result of the January 4, 1989 conviction, which carried a maximum sentence of two years imprisonment.  The Government argued, and presented evidence, that Mr. Purnell served out the entire two year sentence, which meant that he was released on that conviction in November of 1990 (although he pleaded guilty on January 4, 1989, he was given credit for time served since November 1988).

Mr. Purnell's counsel objected, arguing that the Government had not met its burden of proving by a preponderance of the evidence that Mr. Purnell actually was in custody in April of 1990.  The Court considered but ultimately overruled Mr. Purnell's objection, finding that this conviction properly should be counted.  The Court found that on January 4, 1989, Mr. Purnell pleaded guilty to an offense in state court that carried a two-year maximum sentence, and that there was no evidence that Mr. Purnell was released on parole prior to serving out the full two-year sentence, which would have concluded in November 1990.  Therefore, the Court found that the Government established by a preponderance of the evidence that Mr. Purnell was incarcerated in April of 1990.  (Sept. 14, 2007 Sentencing Hrg. Tr. 38:13-39:12.)

Mr. Purnell does not state precisely how counsel was deficient in investigating and collecting evidence regarding his prior conviction, nor does he explain what evidence a "proper" investigation would have turned up.  In his memorandum of law supporting his habeas petition, Mr. Purnell states that post-sentencing he "has obtained significant documentation which supports his position that he had prior convictions which were used to substantially increase his sentence that should not have been used."  (Pet. Mem. of Law at 1.)  However, nowhere in that memorandum (or in his petition) does he identify this "significant documentation," or describe how these documents support his position.

10

claims by way of a habeas petition.

**CONCLUSION**

Mr. Purnell knowingly and voluntarily waived his right to appeal his conviction and sentence and his right to collaterally attack his conviction by way of a § 2255 petition. Consequently, the Court will grant the Government's motion, enforce the waiver and decline to review the substantive issues presented in Mr. Purnell's petition. Because Mr. Purnell's petition does not raise any substantial issue, there is <u>no</u> probable cause to issue a certificate of appealability.[7]  An Order consistent with this Memorandum follows.

---

[7] A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, 146 L. Ed. 2d 542, 120 S. Ct. 1595 (2000); <u>Lambert v. Blackwell</u>, 387 F.3d 210, 230 (3d Cir. 2004).  Mr. Purnell has not met this burden in this case.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 06-729-1** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL PURNELL** | : | |
| **Petitioner** | : | |

**O R D E R**

　　**AND NOW**, this  8th  day of September, 2008, upon consideration of Petitioner Michael

Purnell's Motion to Vacate, Set Aside, or Correct Sentence filed pursuant to 28 U.S.C. § 2255

(Docket No. 276), and the Government's Motion to Dismiss Mr. Purnell's motion (Docket No.

277), to which Mr. Purnell did not respond, for the reasons discussed in the accompanying

Memorandum, **IT IS ORDERED** that:

1.　　The Government's Motion to Dismiss (Docket No. 277) is **GRANTED**.

2.　　Petitioner Michael Purnell's § 2255 Motion to Vacate, Set Aside, or Correct Sentence

　　　(Docket No. 276) is **DENIED**.

3.　　There is no probable cause to issue a certificate of appealability.

4.　　The Clerk of Court shall **CLOSE** this case for all purposes, including statistics.

BY THE COURT:


　 /s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE